

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Washington, D.C.

Office of Commissioner
Andrea R. Lucas

## COMMISSIONER'S CHARGE

Pursuant to authority contained in Title VII of the Civil Rights Act of 1964, as amended (Title VII), I issue this Commissioner's Charge against the following employer:

NIKE, Inc.
One Bowerman Drive
Beaverton, OR 97005

I believe this employer is within the jurisdiction of the U.S. Equal Employment Opportunity Commission. I further believe that since at least NIKE's fiscal year 2020 and continuing thereafter, NIKE may have violated and may be continuing to violate Title VII by engaging in a pattern or practice of disparate treatment against White employees, applicants, and training program participants in hiring, promotion, demotion, or separation decisions (including selection for layoffs); internship programs; and mentoring, leadership development, and other career development programs. I believe NIKE may have taken these unlawful actions in an effort to create—in NIKE's own words—a "representative" workforce "equal to the consumer and communities [it] serve[s]," including pursuant to its two "2025 Targets" (30% representation of racial and ethnic minorities at Director Level and above in the United States, and 35% representation of racial and ethnic minorities in NIKE's U.S. corporate workforce) and other "Diversity, Equity, and Inclusion"-related objectives.

NIKE admits in its public documents that due to its actions since fiscal year 2020, NIKE not only met, but exceeded, its five-year 2025 Targets in only two years (by its fiscal year 2022), and that NIKE has continued to further increase its "representation of U.S. racial and ethnic minorities" beyond the Targets since then. In the three years since imposing its five-year 2025 Targets, NIKE admits that it increased "representation of U.S. racial and ethnic minorities" in its U.S. corporate workforce by 9% by increasing it from 32% to 41% (six percentage points above the Target); and at its Director+ level by 7.6% by increasing it from 26% to 34% (four percentage points above the Target).

Additionally, or alternatively, NIKE's practices may have had a disparate impact on White employees, prospective employees, and current and prospective training program applicants and participants.

Specifically, NIKE's unlawful employment practices may include, but are not limited to:

1. Establishing race-based workforce representation quotas, including by setting and publishing two 2025 Targets ("30% representation of racial and ethnic minorities at Director level and above in the U.S." and "35% representation of U.S. racial and ethnic minorities in our U.S. corporate workforce"); stating these "2025 Targets are not just aspirations" but rather "commitments" and "a call to action – with clear goals, strategies, and accountabilities;" providing "all" of NIKE's hundreds of "Vice Presidents access to representation data, with sharp accountability to deliver on their Diversity & Inclusion (D&I) plans," including the 2025 Targets; and tying "executive compensation to NIKE's progress" towards the 2025 Targets.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Washington, D.C.

Office of Commissioner
Andrea R. Lucas

2. Selecting employees for separation motivated, in whole or in part, by race (White), including during layoffs in 2020 and in currently ongoing layoffs in 2024.

3. Providing access to training, development opportunities, and mentoring to "racial and ethnic minorities" based, in whole or in part, on race, in violation of Title VII's prohibitions on discriminating with respect to terms, conditions, or privileges of employment; limiting, segregating, or classifying employees for future employment opportunities or promotion; and discriminating in admission to any training program, including on-the-job training programs. Such programs involving disparate treatment or resulting in disparate impact against White individuals may include, but are not limited to:

    a. The "Amplify" program, an "internal development program for high-potential . . URGs [under-represented groups] at the Director and Senior Director levels" and "Manager and Director levels;"

    b. Corporate-provided access to external training and development programs, including McKinsey's Black, Asian, and Hispanic Management Accelerators programs for mid-level leaders; and McKinsey Academy for NIKE "Senior Directors, Vice Presidents and CNEXT platform emerging leaders;"

    c. "[T]argeted leadership development for Native American and Indigenous leaders;"

    d. A "DEI mentorship program for corporate employees in the U.S.," part of efforts to "develop[] and promot[e] internal talent across all levels and across all U.S. racial and ethnic minorities;" and,

    e. The "Marketing Vanguard Program (MVP), built to accelerate the flow of graduate-level talent from diverse backgrounds and experiences" and "an HR rotational program modeled after MVP."

4. Failing to interview, hire, or promote, classifying, or otherwise discriminating against prospective employees and/or current employees based, in whole or in part, on their race (White), including (a) during the implementation of, or as the result of, NIKE's "diverse slates process," including for "Director and above positions;" or (b) related to NIKE's "focus" on "underrepresented groups (URG)" and "U.S. racial and ethnic minorities" "play[ing] a critical role" or a "critical component in hiring for leadership roles," including at the "Director-level or above" and "at the Senior Director level."

5. Failing to interview, failing to hire, and limiting, segregating, or classifying internship candidates (who, as interns, would constitute employees, prospective employees, or training program applicants) based, in whole or in part, on race, including by preferring internship candidates who were "U.S. racial and ethnic minorities," particularly Black, Hispanic, or Native American, and by implementing "[s]trategies to . . . select diverse candidates for our intern program."

The above allegations are based on publicly available information regarding NIKE, including, but not limited to, NIKE's annual "Impact Reports," proxy statements and other securities filings, EEO-1 data (disclosed publicly by NIKE), and other documents and information published on NIKE's public website; public statements by NIKE and its leadership; and news reporting.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington, D.C.**

Office of Commissioner
Andrea R. Lucas

      The aggrieved individuals include all White employees, former employees, prospective employees, and current and prospective training program applicants and participants who have been, continue to be, or may be in the future adversely affected by the unlawful employment practices complained of herein.

      I, Andrea R. Lucas, a Commissioner of the Equal Employment Opportunity Commission, declare under penalty of perjury that I have cause to believe the foregoing is, to the best of my knowledge and belief, true and correct.

      Executed on this 24th day of May 2024.

                                                        *Andrea R. Lucas*
                                                        Commissioner
                                                        U.S. Equal Employment Opportunity Commission