EXHIBIT F



King & Spalding LLP
110 N Wacker Drive
Suite 3800
Chicago, Illinois 60606
T: +1 312 995 6333
F: +1 312 995 6330
kslaw.com


**Amanda A. Sonneborn**
*Partner*


T: +1 312 764 6940
asonneborn@kslaw.com

January 27, 2026


**VIA E-MAIL**
**VIA RESPONDENT PORTAL**

**CONFIDENTIAL**

David Davis                          Ahlam Abdellatif
District Director                    Investigator
US Equal Employment Opportunity      US Equal Employment Opportunity
Commission                           Commission
1222 Spruce, Rm 8.100                450 Golden Gate Avenue
St. Louis, MO 63103                  5 West P.O. Box 36025
David.Davis@eeoc.gov                 San Francisco, CA 94102
                                     Ahlam.Abdellatif@eeoc.gov

Re:    *Lucas v. NIKE, Inc. (Charge No. 551-2024-04996)*
       *Respondent's Response to Modified Subpoena No. SL-25-08*

District Director Davis and Investigator Abdellatif:

In response to Subpoena No. SL-25-08 (the "Subpoena") served on Respondent NIKE, Inc. ("NIKE" or the "Company") on October 1, 2025, as modified by the EEOC's Determination regarding Nike's Petition to Revoke dated January 5, 2026 (the "Determination"), and in

connection with the above-referenced matter, NIKE submits the following objections and supplemental responses to the Subpoena.[1]

## PRELIMINARY STATEMENT AND GENERAL OBJECTIONS TO SUBPOENA

1.      The Subpoena's requests are broad, ambiguous, and unduly burdensome, and NIKE's responses and objections are based on its investigation to date. NIKE is available and willing to meet and confer with the EEOC regarding its responses and document production. The following responses and objections are therefore made without prejudice to NIKE's right to amend or supplement its objections, responses, and document production accordingly.

2.      NIKE objects to the Subpoena's defined term "Documents," which includes "electronically stored information…stored in any medium from which information can be obtained," on the grounds that it is overbroad, unduly burdensome, vague, ambiguous, and disproportionate to the needs of this investigation.

3.      NIKE objects to the Subpoena's defined term "Program(s)," on the grounds that it is overbroad, unduly burdensome, vague, ambiguous, and disproportionate to the needs of this investigation.

4.      NIKE objects to all Subpoena requests demanding information prior to November 26, 2023, given any allegedly discriminatory acts prior to that date are time-barred and therefore irrelevant to the EEOC's investigation.

---

[1] The statements set forth herein are based upon facts known to NIKE at the time of submission, are based on NIKE's understanding of the allegations presented in Charge No. 551-2024-04996 (the "Charge") and requests in the Subpoena and are subject to supplementation as additional facts become available or in the event the Commissioner or Investigator provides further information as to the Charge or the Subpoena.  NIKE is providing this information, which it considers to be confidential, with the understanding that the Commission will maintain it in confidence, use it exclusively in its investigation of the above Charge, and not disclose it to anyone outside the Commission without NIKE's express written consent pursuant to the requirements under the Freedom of Information Act, 5 U.S.C. § 552, et seq., and other statutes including, without limitation, 18 U.S.C. § 1905.  This disclosure of information, including any production, to the Commission is for purposes of its investigatory proceedings and is not and should not be considered a waiver of attorney-client privilege or work-product privilege, which NIKE maintains.

## SPECIFIC OBJECTIONS AND SUPPLEMENTAL RESPONSES TO SUBPOENA REQUESTS

**Request No. 1**:

Describe or produce documents that show Respondent's organizational structure from June 1, 2019 to the present, including all structural units (brands, divisions, functional units, design teams, etc.); hierarchical authority between units; dates of changes to unit structure; and the names, job titles, and dates in position of each unit head.

**Response to Request No. 1**:

NIKE objects to this Request on the grounds that it is overbroad, unduly burdensome, vague, ambiguous, and disproportionate to the needs of this investigation, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of relevant or admissible evidence regarding the Charge. The Request seeks documents showing NIKE's organizational structure for the last six years without regard to the relevance or necessity of this information, and the bulk of the information sought will be irrelevant since the vast majority of NIKE's organization has nothing to do with the allegations of the Charge. This Request amounts to an impermissible "fishing expedition." *See EEOC v. United Air Lines, Inc*., 287 F.3d 643, 653 (7th Cir. 2002); *accord EEOC v. BASF Corp*., No. 02-MC-00354, 2003 WL 21219038, at *2 (E.D. Mo. Mar. 25, 2003).

NIKE further objects to the temporal scope beginning on June 1, 2019 on the grounds that any allegedly discriminatory acts occurring before November 26, 2023 are time-barred and therefore irrelevant to the EEOC's investigation. When the EEOC requested these same documents in its Second RFI, it limited the timeframe to January 1, 2022, through the present. *See* Second RFI dated Feb. 18, 2025 ("Second RFI"), Req. No. 1. NIKE further objects to the Request to the extent it seeks information about NIKE's organization outside of the United States. When the EEOC requested these same documents in its Second RFI, it limited the scope to the United States. *Id*. The EEOC's unexplained expansion of the timeframe by two-and-a-half years, and of the geographical scope to cover the entire world, underscores the overbroad, unduly burdensome, and arbitrary nature of this Request.

NIKE further objects to the extent the EEOC seeks this information by Subpoena even though the EEOC never requested some of this information (information dating back to June 1, 2019 and information about NIKE's organization outside of the United States) through an RFI before issuing this Subpoena—a violation of Section 24.1 of its Compliance Manual.

NIKE further objects to the undefined terms "structural units," "hierarchy," "changes to unit structure," and "unit head" as vague and ambiguous in context.

Subject to and without waiving the foregoing objections, NIKE again refers the EEOC to its publicly available corporate governance site (https://investors.nike.com/investors/corporate-governance/), which contains information regarding NIKE's governance structure and detailed disclosures about its Board of Directors, executive officers, and corporate leadership policies. NIKE also refers the EEOC to Exhibit 21 to its Form 10-K (https://www.sec.gov/ix?doc=/Archives/edgar/data/0000320187/000032018725000047/nke-20250531.htm), which contains current, verified information on NIKE's structure.

NIKE also provides the following description: NIKE is a corporation headquartered in Beaverton, Oregon and incorporated under the laws of the State of Oregon. NIKE's principal business activity is the design, development and worldwide marketing and selling of athletic footwear, apparel, equipment, accessories and services. NIKE is the largest seller of athletic footwear and apparel in the world. NIKE's U.S. Corporate workforce maintains a highly matrixed and cross-functional organizational structure. It does not have formally designated "departments," but rather generally is organized in terms of brands, geographies, functions, teams, and/or other structures (e.g., sports or consumer type). Employees may have both direct and dotted-line relationships.

NIKE refers the EEOC to Bates Nos. NIKE (EEOC 551-2024-04996) 0001790-013145 and NIKE (EEOC 551-2024-04996) 0001667-001789, which includes (1) Workday-generated Excel reports reflecting the "Senior Leadership Team"[2] and their direct reports at 6-month intervals within the applicable limitations period; (2) Workday-generated reports of each "Senior Leadership Team" member's organization chart generated on January 1, 2026; (3) a copy of NIKE's Form 10-K, including Exhibit 21(s); and (4) copies of materials from NIKE's corporate governance site. The Workday system does not store historical information related to each "Senior Leadership Team" member's organization chart, so NIKE is unable to obtain this information.

While NIKE understands that pursuant to the Determination the EEOC has limited the scope of this Request to exclude units wholly located outside of the United States, because of the limitations of NIKE's electronic databases, including Workday, and the highly matrixed, cross-functional, and global structure of NIKE's organization, documents produced in response to this Request may include information that is non-responsive and/or outside the scope of this Charge

---

[2] NIKE defines "Senior Leadership Team" as those positions that report directly to NIKE's President & CEO.

*January 27, 2026*
*Page 5 of 31*

and the EEOC's investigatory authority. NIKE's production of such information is not intended to be, and should not construed as, a waiver of any of the previously-stated objections.

NIKE's investigation is ongoing, and NIKE therefore reserves its right to amend or supplement its responses and objections and to continue to produce documents on a rolling basis. NIKE is willing and available to meet and confer regarding this Request should the EEOC determine additional information is needed for a complete response.

**Request No. 2:**

For each layoff of employees in Respondent's U.S. Corporate workforce from January 1, 2024 to the present, identify:
a.      The date each layoff was implemented;
b.      The departments and positions subjected to the layoff;
c.      For each position subjected to the layoff, the specific criteria and/or factors used to evaluate and select employees for layoff; and
d.      The names and job titles of the individuals who selected employees for layoff.

**Response to Request No. 2:**

NIKE objects to this Request on the grounds that it is overbroad, unduly burdensome, vague, ambiguous, and disproportionate to the needs of this investigation, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of relevant or admissible evidence regarding the Charge. The Request demands detailed information regarding every department and position affected by "layoffs" in NIKE's "U.S. Corporate workforce" over an almost two-year period, as well as the identities of all individuals involved in those decisions, regardless of whether they have any nexus to the allegations in the Charge. This Request is a classic "fishing expedition" whereby the EEOC is working backwards—rather than starting from an employment decision that the EEOC believes may have been discriminatory, the EEOC is seeking information about every employment decision in the "idle hope" that evidence of wrongdoing might be uncovered for one of them. *See, e.g., United Air Lines, Inc.*, 287 F.3d at 653; *BASF Corp.*, 2003 WL 21219038, at *2. Judicial enforcement of this Request would be improper since it "has been made for an illegitimate purpose." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 72 n.26 (1984). Such a sweeping inquiry is not tethered to any specific employment practice alleged to be discriminatory and exceeds the EEOC's investigatory authority.

NIKE further objects to the overbroad and unduly burdensome definition of "Layoff" used in the Subpoena, which encompasses every separation initiated by NIKE due to "business needs," which is not a defined term and is not limited to programmatic reductions in force or group terminations of a certain size that are commonly referred to as "layoffs." The term could also

encompass any individual separation as well as the overwhelming majority of all employment separations at NIKE. In addition, NIKE objects to the term "U.S. Corporate workforce," which is undefined and therefore vague as to the categories of employees targeted by the Request. This Request is thus "too indefinite" to be enforced. *Id.*

NIKE further objects that, to the extent the Request is intended to seek information to support a disparate impact analysis, it is improper for violating controlling federal policy. *See* Exec. Order 14281, "Restoring Equality of Opportunity and Meritocracy" (Apr. 23, 2025), available at https://www.whitehouse.gov/presidential-actions/2025/04/restoring-equality-of-opportunity-and-meritocracy/.

NIKE further objects to the extent the EEOC seeks this information by Subpoena even though the EEOC never requested some of this information (subparts (a) and (b) for "each layoff of employees in Respondent's U.S. Corporate workforce from January 1, 2024 to the present") through an RFI before issuing this Subpoena—a violation of Section 24.1 of its Compliance Manual.

NIKE further objects to this Request to the extent it seeks information that is protected from disclosure by the attorney-client privilege and/or the work product doctrine.

NIKE further objects to the Request to the extent it seeks documents containing sensitive employee information, including performance metrics and communications regarding layoff decisions, and to the extent it encompasses documentation of confidential deliberations and other sensitive business records wholly unrelated to any specific employment decision or alleged discriminatory practice at issue. Disclosure of such materials would infringe on employee privacy rights and implicate confidential business information. NIKE is not obligated to produce such materials absent a compelling showing of relevance and necessity, which the EEOC cannot make, and appropriate safeguards. *See, e.g., Buergofol GmbH v. Omega Liner Co.,* No. 22-CV-04112, 2025 WL 1593079, at *2 (D.S.D. June 5, 2025); *Flat Branch Mortg., Inc. v. Fricke*, No. 23:04143-CV, 2025 WL 1914164, at *5 n.5 (W.D. Mo. Apr. 16, 2025); *Warner Chilcott Ltd. v. Express Scripts, Inc.*, No. 17MC250, 2017 WL 4084045, at *2 (E.D. Mo. Sept. 14, 2017); *Poulos v. Summit Hotel Props., LLC*, No. CIV 09-4062, 2010 WL 2640396, at *3 (D.S.D. July 1, 2010); *Litton Indus., Inc. v. Chesapeake & Ohio Ry. Co.*, 129 F.R.D. 528, 530 (E.D. Wis. 1990).

Subject to and without waiving the foregoing objections, NIKE understands that pursuant to its Determination, the EEOC has modified the term "Layoff" to refer to "all employee reductions in force that result in one or more employee separations coded as 'Reduction in Force' in NIKE's

database." (Determination, at 21-22.) As well, based on the Determination, NIKE understands that it may define "U.S. Corporate workforce" as "all U.S.-based full-time employees who do not work in our retail stores, distribution centers (DCs) or Air Manufacturing Innovation (Air MI)." (Determination, at 21.) However, because of the limitations of NIKE's electronic databases, and the highly matrixed, cross-functional, and global structure of NIKE's organization, documents produced in response to this Request may include information that is non-responsive and/or outside the scope of this Charge and the EEOC's investigatory authority. NIKE's production of such information is not intended to and should not constitute a waiver of any of the previously-stated objections.

NIKE again directs the EEOC to Bates Nos. NIKE (EEOC 551-2024-04996) 000305–344, which was previously produced in response to the EEOC's Second RFI.

NIKE also refers the EEOC to Bates Nos. NIKE (EEOC 551-2024-04996) 001259, which identifies all of the U.S. Corporate restructures and reductions in force that have been managed through NIKE's Organization Transformation Solutions ("OTS") team from January 1, 2024 to January 9, 2026. During this period, OTS has provided activation support for group terminations or restructures that, as a general matter, involve 10 or more employee position attribute changes (*e.g.*, a termination or lateral job change).

NIKE also refers the EEOC to Bates Nos. NIKE (EEOC 551-2024-04996) 001214-001231 and NIKE (EEOC 551-2024-04996) 001260-001666, which includes (1) Worker Adjustment and Retraining Notification ("WARN") notice and list and (2) Older Workers Benefit Protection Act ("OWBPA") disclosure statements that were provided to U.S. Corporate employees impacted by a reduction-in-force from January 1, 2024 to the present.

NIKE also refers the EEOC to Bates Nos. NIKE (EEOC 551-2024-04996) 001258, a sortable report generated by NIKE's Workday system of U.S. Corporate employees whose separations were coded as "Reduction in Force" from January 1, 2024 to January 15, 2026 that includes the following information: (a) employee ID, (b) employee name, (c) race/ethnicity, (d) compensation grade, (e) job title, (f) termination category, (g) reason for termination, (h) termination date, (i) company ID, (j) company, (k) job category, (l) location, and (m) hire date. The data from this report is current as of January 15, 2026.

NIKE's investigation is ongoing, and NIKE therefore reserves its right to amend or supplement its responses and objections and to continue to produce responsive documents on a rolling basis. NIKE is willing and prepared to meet and confer regarding this Request should the EEOC determine additional information is needed for a complete response.

*January 27, 2026*
*Page 8 of 31*

**Request No. 3:**

For each layoff identified in response to Request 2 above, produce:

a.      All documents related to implementation of the layoff, including but not limited to documents describing the layoff's purpose, scope, selection criteria, guidelines, and instructions to individuals selecting employees for layoff;

b.      All staffing plans, restructuring plans, and similar documents related to the layoff;

c.      All documents created during the process of evaluating and selecting employees for layoff, including but not limited to notes, memoranda, charts, tables, and lists;

d.      For all employees in the departments and positions subjected to the layoff, all documents showing the relevant performance metrics and other criteria used to evaluate and select employees for layoff;

e.      All communications with employees selected for layoff regarding their selection;

f.      All documents regarding severance packages, rehire eligibility, and other options for benefits or alternative employment opportunities for employees selected for layoff; and

g.      All public statements by Respondent regarding the layoff.

**Response to Request No. 3:**

NIKE objects to this Request on the grounds that it is overbroad, unduly burdensome, vague, ambiguous, and disproportionate to the needs of this investigation, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of relevant or admissible evidence regarding the Charge. The Request seeks "all" documents related to the implementation of each layoff since January 1, 2024, including internal communications, business plans, employee performance data, and public statements, without reasonable limitations as to scope and despite the fact that a subset of such documents would suffice to provide the information sought.

NIKE further objects to this subpart (g) of this Request as unduly burdensome because it explicitly demands production of publicly available documents already accessible to the EEOC.

NIKE further objects to definition of the term "Layoff" and the undefined term "U.S. Corporate workforce" for the reasons above, and to the undefined terms and phrases "implementation of the layoff" and "staffing plans, restructuring plans, and similar documents," as vague and ambiguous in context. "All" documents across these broad categories could be construed to cover virtually every document produced by NIKE's human resources organization or even supervisors at every level across the organization, including every document about staffing,

employee performance metrics, severance benefits, etc. Such a demand imposes an undue burden on NIKE and is not proportional to the needs of this investigation.

NIKE further objects that this Request is, again, a classic "fishing expedition," in that the underlying Charge reflects no reason for the EEOC to believe that any particular employment decision was discriminatory, so the EEOC seeks every scrap of paper generated in the course of layoffs, including every note, for every single employment decision, in the "idle hope" that evidence of wrongdoing might be uncovered for one of them. S*ee, e.g., United Air Lines, Inc*., 287 F.3d at 653; *BASF Corp*., 2003 WL 21219038, at *2. Judicial enforcement of this Request would be improper since it is "too indefinite" and "has been made for an illegitimate purpose." *Shell Oil Co*., 466 U.S. at 72 n.26. Such a sweeping inquiry is not tethered to any specific employment practice alleged to be discriminatory and exceeds the EEOC's investigatory authority.

NIKE further objects that, to the extent the Request is intended to seek information to support a disparate impact analysis, it is improper for violating controlling federal policy. *See* Exec. Order 14281, "Restoring Equality of Opportunity and Meritocracy" (Apr. 23, 2025), available at https://www.whitehouse.gov/presidential-actions/2025/04/restoring-equality-of-opportunity-and-meritocracy/.

NIKE further objects to this Request to the extent it seeks information that is protected from disclosure by the attorney-client privilege and/or the work product doctrine.

NIKE further objects to the Request to the extent it seeks documents containing sensitive employee information, including performance metrics and communications regarding layoff decisions, and to the extent it encompasses documentation of confidential deliberations and competitively sensitive business records wholly unrelated to any specific employment decision or alleged discriminatory practice at issue. Disclosure of such materials would infringe on current and former employees' privacy rights and implicate confidential business information. NIKE is not obligated to produce such materials absent a compelling showing of relevance and necessity, which the EEOC cannot make, and appropriate safeguards. *See, e.g., Buergofol GmbH*, 2025 WL 1593079, at *2; *Flat Branch Mortg., Inc*., 2025 WL 1914164, at *5 n.5; *Warner Chilcott Ltd*., 2017 WL 4084045, at *2; *Poulos*, 2010 WL 2640396, at *3; *Litton Indus., Inc*., 129 F.R.D. at 530.

NIKE further objects to the extent the EEOC seeks this information by Subpoena even though the EEOC never requested this information through an RFI before issuing this Subpoena—a violation of Section 24.1 of its Compliance Manual.

Subject to and without waiving the foregoing objections, NIKE understands that pursuant to its Determination, the EEOC has modified the term "Layoff" to refer to "all employee reductions in force that result in one or more employee separations coded as 'Reduction in Force' in NIKE's database." (Determination, at 21-22.) As well, based on the Determination, NIKE understands that it may define "U.S. Corporate workforce" as "all U.S.-based full-time employees who do not work in our retail stores, distribution centers (DCs) or Air Manufacturing Innovation (Air MI)." (Determination, at 21.) Because of the limitations of NIKE's electronic databases, and the highly matrixed, cross-functional, and global structure of NIKE's organization, documents produced in response to this Request may include information that is non-responsive and/or outside the scope of this Charge and the EEOC's investigatory authority. NIKE's production of such information is not intended to and should not constitute a waiver of any of the previously-stated objections.

NIKE again directs the EEOC to Bates Nos. NIKE (EEOC 551-2024-04996) 000305–344, which was previously produced in response to the EEOC's Second RFI.

NIKE also refers the EEOC to Bates Nos. NIKE (EEOC 551-2024-04996) 001214-001231 and NIKE (EEOC 551-2024-04996) 001260-001666, which includes (1) Worker Adjustment and Retraining Notification ("WARN") notice and list and (2) Older Workers Benefit Protection Act ("OWBPA") disclosure statements that were provided to U.S. Corporate employees impacted by a reduction-in-force from January 1, 2024 to the present.

NIKE agrees to produce the following on a rolling basis: employee FAQs and conversation and activation readiness materials and scripts (if any exist) related to any reduction-in-force actions impacting U.S. Corporate employees from January 1, 2024 to the present.

Based on a reasonable and diligent search, to date, NIKE has been unable to locate documents related to any press releases relating to any relevant reduction-in-force actions impacting U.S. Corporate employees that occurred from January 1, 2024 to the present.

NIKE's investigation is ongoing, and NIKE therefore reserves its right to amend or supplement its responses and objections and continue to produce responsive documents on a rolling basis. NIKE is willing and prepared to meet and confer regarding this Request should the EEOC determine additional information is needed for a complete response.

**<u>Request No. 4:</u>**

For each layoff identified in response to Request 2 above, produce a sortable database (such as Excel (.xls) or comma delimited file (.csv)), with the first database row containing the field or variable names of the requested information and each subsequent row containing the requested information for each individual, identifying all employees considered or evaluated for potential layoff, including:

a.      First name;
b.      Last name;
c.      Employee number or unique identifier;
d.      Date of birth;
e.      Race / Ethnicity;
f.      Home address;
g.      Mobile phone number;
h.      Email address;
i.      Date of hire;
j.      Department at time of layoff implementation;
k.      Job title at time of layoff implementation;
l.      Whether selected for layoff;
m.      Reason for selection or non-selection for layoff;
n.      Date of layoff (if applicable);
o.      Current department (if applicable);
p.      Current job title (if applicable);
q.      Date of non-layoff separation (if applicable); and
r.      Reason for non-layoff separation (if applicable).

**<u>Response to Request No. 4:</u>**

NIKE objects to this Request on the grounds that it is overbroad, unduly burdensome, vague, ambiguous, and disproportionate to the needs of this investigation, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of relevant or admissible evidence regarding the Charge. Specifically, the Request demands detailed information regarding every employee "considered or evaluated for potential layoff," and inasmuch as any reduction in force designed to reduce costs or rationalize a company's headcount could, in theory, affect any employee, this Request could be construed to seek detailed information about every employee across NIKE's organization. In fact, because subparts (q) and (r) of this Request seek information related to "non-layoff" separations, every employment separation would fall within the scope of this Request. NIKE further objects to the definition of the term

"Layoff" and the undefined term "U.S. Corporate workforce" for the reasons stated above, and NIKE objects to the undefined terms "considered" and "evaluated" as vague and ambiguous in context. This Request also seeks employees' dates of birth which are not relevant to the claims asserted in the Charge which are based on race (not age) discrimination.

NIKE further objects that this Request appears again to be a classic "fishing expedition," where because the underlying Charge lacks a single aggrieved individual, the EEOC appears to want NIKE to produce a list of employees who were selected for termination, along with their personal contact details, so the EEOC can contact them in the "idle hope" that they will find one who will say that they believe the reason for their separation was discriminatory, even though they never complained to the EEOC or to NIKE. *See, e.g., United Air Lines, Inc.*, 287 F.3d at 653; *BASF Corp.*, 2003 WL 21219038, at *2. This approach is the opposite of a typical EEOC investigation. Judicial enforcement of this Request would be improper since it is "too indefinite" and "has been made for an illegitimate purpose." *Shell Oil Co.*, 466 U.S. at 72 n.26. Such a sweeping inquiry is not tethered to any specific employment practice alleged to be discriminatory and exceeds the EEOC's investigatory authority.

NIKE further objects that, to the extent the Request is intended to seek information to support a disparate impact analysis, it is improper for violating controlling federal policy. *See* Exec. Order 14281, "Restoring Equality of Opportunity and Meritocracy" (Apr. 23, 2025), available at https://www.whitehouse.gov/presidential-actions/2025/04/restoring-equality-of-opportunity-and-meritocracy/.

NIKE further objects to the extent the EEOC seeks this information by Subpoena even though the EEOC never requested this information through an RFI before issuing this Subpoena—a violation of Section 24.1 of its Compliance Manual.

NIKE further objects to the Request to the extent it seeks sensitive employee information and details of confidential deliberations and other sensitive business information wholly unrelated to any specific employment decision or alleged discriminatory practice at issue. Disclosure of such materials would infringe on current and former employees' privacy rights and implicate confidential business information. NIKE is not obligated to produce such materials absent a compelling showing of relevance and necessity, which the EEOC cannot make, and appropriate safeguards. *See, e.g., Buergofol GmbH*, 2025 WL 1593079, at *2; *Flat Branch Mortg., Inc.*, 2025 WL 1914164, at *5 n.5; *Warner Chilcott Ltd.*, 2017 WL 4084045, at *2; *Poulos*, 2010 WL 2640396, at *3; *Litton Indus., Inc.*, 129 F.R.D. at 530.

Subject to and without waiving the foregoing objections, NIKE understands that pursuant to its Determination, the EEOC has modified the term "Layoff" to refer to "all employee reductions in force that result in one or more employee separations coded as 'Reduction in Force' in NIKE's database." (Determination, at 21-22.) As well, based on the Determination, NIKE understands that it may define "U.S. Corporate workforce" as "all U.S.-based full-time employees who do not work in our retail stores, distribution centers (DCs) or Air Manufacturing Innovation (Air MI)." (Determination, at 21.) Because of the limitations of NIKE's electronic databases, documents produced in response to this Request may include information that is non-responsive and/or outside the scope of this Charge and the EEOC's investigatory authority. NIKE's production of such information is not intended to and should not constitute a waiver of any of the previously-stated objections.

NIKE refers the EEOC to Bates Nos. NIKE (EEOC 551-2024-04996) 001258, a sortable report generated by NIKE's Workday system of U.S. Corporate employees whose separations were coded as "Reduction in Force" from January 1, 2024 to January 15, 2026 that includes the following information: (a) employee ID, (b) employee name, (c) race/ethnicity, (d) compensation grade, (e) job title, (f) termination category, (g) reason for termination, (h) termination date, (i) company ID, (j) company, (k) job category, (l) location, and (m) hire date. The data from this report is current as of January 15, 2026.

NIKE is working to collect and agrees to produce additional reports relating to reduction-in-force actions from January 1, 2024 that may be responsive to this Request, and will do so on a rolling basis.

NIKE's investigation is ongoing, and NIKE therefore reserves its right to amend or supplement its responses and objections and to continue producing documents on a rolling basis. Nike is willing and prepared to meet and confer regarding this Request should the EEOC determine additional information is needed for a complete response.

### Request No. 5:

Produce all documents relating to Respondent's use of employment of racial or ethnic minority workers as a factor in setting executive compensation from June 1, 2019, to the present.

### Response to Request No. 5:

NIKE objects to the Request on the grounds that it is overbroad, unduly burdensome, vague, ambiguous, and disproportionate to the needs of the investigation, and seeks information that is

neither relevant nor reasonably calculated to lead to the discovery of relevant or admissible evidence regarding the Charge. NIKE specifically objects to the phrase, "setting executive compensation," as vague and ambiguous. The Request seeks "all documents" related to NIKE's alleged use of a particular factor in executive compensation practices, whether or not those documents bear any connection to the allegations in the charge and despite the fact that a subset of such documents would suffice to provide the information sought.

NIKE further objects to this request as vague and ambiguous in context.

NIKE further objects to the temporal scope beginning on June 1, 2019, on the grounds that any allegedly discriminatory acts occurring before November 26, 2023 are time-barred and therefore irrelevant to the EEOC's investigation.

NIKE further objects to the EEOC seeking this information by Subpoena even though the EEOC never requested some of this information through an RFI before issuing this Subpoena—a violation of Section 24.1 of its Compliance Manual.

NIKE further objects that the Request seeks confidential, proprietary, and trade secret information concerning NIKE's executive compensation strategies, internal metrics, market analyses, and Compensation Committee deliberations. NIKE is not obligated to produce such materials absent a compelling showing of relevance and necessity, which the EEOC cannot make, and appropriate safeguards. *See, e.g., Buergofol GmbH*, 2025 WL 1593079, at *2; *Flat Branch Mortg., Inc.*, 2025 WL 1914164, at *5 n.5; *Warner Chilcott Ltd.*, 2017 WL 4084045, at *2; *Poulos*, 2010 WL 2640396, at *3; *Litton Indus., Inc.*, 129 F.R.D. at 530.

NIKE further objects to this Request to the extent it seeks information that is protected from disclosure by the attorney-client privilege and/or the work product doctrine.

To the extent that this Request seeks general information about the structure and procedures used by NIKE in determining executive compensation, such information is already publicly disclosed and available in Respondent's annual proxy statements, SEC filings, and investor relations website. *See, e.g.*, Bates Nos. NIKE (EEOC 551-2024-04996) 000368–372. This includes executive compensation philosophies, pay-for-performance strategies, committee oversight responsibilities, and related policies. Additional demands for internal documentation duplicative of publicly available sources are unnecessary and impose undue burden.

Subject to and without waiving the foregoing objections, to the extent this Request seeks information about Performance-based Restricted Stock Units ("PSUs"), and as explained in

NIKE's previous response to the EEOC's Second RFI, Req. No. 6 and prior Subpoena response, PSUs are equity awards available to Vice Presidents and above. PSUs are valued using two metrics, a Relative Total Shareholder Return ("rTSR") and a People & Planet Modifier. The rTSR looks at NIKE's stock performance relative to other companies in the S&P 500 over a three-year period.

NIKE again states that the People and Planet modifier can further increase or decrease the number of units awarded based on achievement of People and Planet goals, which includes a holistic assessment of NIKE's performance with respect to employee engagement and inclusion, leadership diversity, and sustainability. However, during the applicable limitations period, the rTSR threshold was not met, and, therefore, the People & Planet modifier was not applied. As a result, no compensation was awarded based on the criteria referenced in the Request during the applicable limitations period.

NIKE also clarifies for the EEOC that the People & Planet modifier (which is no longer a metric utilized to value PSUs) is the only component of executive compensation that could fall under this Request.

NIKE also refers the EEOC to Bates Nos. NIKE (EEOC 551-2024-04996) 013160-013197, which includes an excerpt of publicly disclosed and available information in Respondent's annual proxy statement.

NIKE also refers the EEOC to Bates Nos. NIKE (EEOC 551-2024-04996) 001232-001257 and NIKE (EEOC 551-2024-04996) 013146-013157, which includes NIKE's Long-Term Incentives policy and PSU program information.

NIKE's investigation is ongoing, and NIKE therefore reserves its right to amend or supplement its responses and objections and to continue producing documents on a rolling basis. NIKE is willing and prepared to meet and confer regarding this Request should the EEOC determine additional information is needed for a complete response.

**Request No. 6:**

To the extent Respondent has tracked or maintained data regarding the employment of racial or ethnic minority employees within its U.S. Corporate workforce, produce that data from June 1, 2019, to the present.

**Response to Request No. 6:**

NIKE objects to the Request on the grounds that it is overbroad, unduly burdensome, vague, ambiguous, and disproportionate to the needs of the investigation, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of relevant or admissible evidence regarding the Charge. The Request seeks any "data regarding the employment of racial or ethnic minority employees within its U.S. Corporate workforce" maintained for more than six years, regardless of whether that data bears any connection to the allegations in the charge.

NIKE further objects to the undefined terms and phrases "regarding the employment of racial and ethnic minority employees" and "U.S. Corporate workforce" as vague and ambiguous in context. Inasmuch as NIKE employs "racial or ethnic minority employees" in the U.S., virtually any data regarding their employment could be construed to fall within the scope of this Request. This Request is fatally unclear as to what the EEOC seeks and "too indefinite" to be enforced. *Shell Oil Co.*, 466 U.S. at 72 n.26.

NIKE further objects that, to the extent the Request is intended to seek information to support a disparate impact analysis, it is improper for violating controlling federal policy. *See* Exec. Order 14281, "Restoring Equality of Opportunity and Meritocracy" (Apr. 23, 2025), available at https://www.whitehouse.gov/presidential-actions/2025/04/restoring-equality-of-opportunity-and-meritocracy/.  .

NIKE further objects to the temporal scope beginning on June 1, 2019, on the grounds that any allegedly discriminatory acts occurring before November 26, 2023 are time-barred and therefore irrelevant to the EEOC's investigation.

NIKE further objects to this Request to the extent it seeks information that is protected from disclosure by the attorney-client privilege and/or the work product doctrine.

NIKE further objects on the grounds that the Request seeks information that is in the EEOC's possession, custody, and control in the form of EEO-1 reports that the EEOC requires employers to submit to the EEOC annually.

NIKE further objects on the grounds that certain responsive data is equally available to the EEOC through a Memorandum of Understanding ("MOU") with the OFCCP. Under this MOU, the EEOC may request relevant information directly from the OFCCP, including information responsive to this request. See https://www.eeoc.gov/memorandum-understanding-between-us-

department-labor-office-federal-contract-compliance-programs (describing the MOU as a "model for interagency coordination for equal employment opportunity (EEO) programs more broadly").

NIKE further objects to the EEOC seeking this information by Subpoena even though the EEOC never requested this information through an RFI before issuing this Subpoena—a violation of Section 24.1 of its Compliance Manual.

NIKE further objects to disclosing personal information about current and former employees, as this would infringe upon the privacy rights of those individuals.

Subject to and without waiving the foregoing objections, NIKE refers the EEOC to Bates Nos. NIKE (EEOC 551-2024-04996) 000373–001213, which includes its Employer Information Reports (EEO-1 Component 1) submitted to the EEOC for 2023 and 2024.

NIKE also refers the EEOC to Bates Nos. NIKE (EEOC 551-2024-04996) 013158-013159, the FY24 NIKE, Inc. Representation by the Numbers report.

NIKE's investigation is ongoing, and NIKE therefore reserves its right to amend or supplement its responses and objections and to continue producing documents on a rolling basis. NIKE is willing and prepared to meet and confer regarding this Request should the EEOC determine additional information is needed for a complete response.

**Request No. 7:**

Describe Respondent's "Diverse Slates" process, including when, why, and how it was implemented; how the process worked when it was implemented; any changes to the process since its implementation and why such changes were made; which positions the process applies to; and who oversees application of the process.

**Response to Request No. 7:**

NIKE objects to the Request on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the investigation, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of relevant or admissible evidence regarding the Charge.

NIKE further objects to this Request to the extent it seeks information that is protected from disclosure by the attorney-client privilege and/or the work product doctrine.

NIKE further objects that, to the extent the Request is intended to seek information to support a disparate impact analysis, it is improper for violating controlling federal policy. *See* Exec. Order 14281, "Restoring Equality of Opportunity and Meritocracy" (Apr. 23, 2025), available at https://www.whitehouse.gov/presidential-actions/2025/04/restoring-equality-of-opportunity-and-meritocracy/.

Subject to and without waiving the foregoing objections, NIKE refers the EEOC to its prior substantive submissions responsive to this Request, including its position statement and its response to the Second RFI, Req. No. 3.

NIKE's position statement explains that NIKE's hiring processes provide access and opportunities for all qualified candidates and do not use race as a consideration when making individual hiring or other employment decisions. *See* Position Statement, at 14–15; *see also id*. at 2–3.

NIKE again refers the EEOC to its Code of Conduct, Bates Nos. NIKE (EEOC 551-2024-04996) 000001–36, and its Policy on Inclusion and the Prohibition of Discrimination, Retaliation and Harassment in the Workplace, Bates Nos. NIKE (EEOC 551-2024-04996) 000037–45. These documents demonstrate that NIKE is committed to providing equal opportunity employment and does not discriminate (or permit discrimination) against employees and applicants for employment based upon race or any other protected classification. NIKE's equal employment opportunity policy applies to all terms and conditions of employment and employment decisions, including in recruitment and hiring.

NIKE also again directs the EEOC to the Declaration of Kizmet Mills. *See* Bates Nos. NIKE (EEOC 551-2024-04996) 000046–47. Ms. Mills serves as NIKE's Chief Diversity Equity and Inclusion Officer. In the declaration, Ms. Mills explains: "NIKE's training, development opportunities, and mentoring opportunities are subject to NIKE's policies, including but not limited to its Equal Employment Opportunity and Matter of Respect policy, which require that these types of opportunities be open to, and/or used by, all employees based on job-related qualifications or criteria, and not on race." *Id*. ¶ 3.

Subject to and without waiving the foregoing objections, NIKE again states that the concept of a "diverse slate" refers to sourcing guidelines for Talent Acquisition that first became available in 2018. The guidelines define a diverse slate as a pool of qualified candidates that consists of at least two women and one U.S. Racial and/or Ethnic Minority, as defined by EEO1 categories, advancing to hiring manager and business interviews. A woman who identifies as a Racial and/or Ethnic Minority may satisfy both categories. NIKE's Functional Affirmative Action Plan

Agreement with the OFCCP permits NIKE to implement Diverse Slates to address substantial disparity in the placement or utilization of minority groups or in the utilization of men or women of minority groups. And while Diverse Slates, where followed, were designed to broaden the funnel of qualified candidates applying to open positions, the guidelines did not alter NIKE's Equal Employment Opportunity hiring practices. Employees involved in assessing the qualifications of each candidate are directed that, at all stages of the hiring process, NIKE's policy is to identify and select the most qualified talent regardless of race, ethnicity, gender, or other protected criteria. Interviewers and hiring managers are similarly bound by NIKE's EEO policy, which prohibits consideration of protected criteria. And, when a diverse slate is not viable in a certain hiring scenario, there is no prohibition against the hiring process moving forward with the qualified candidates available.

NIKE also again refers the EEOC to previously-produced Bates Nos. NIKE (EEOC 551-2024-04996) 000259–66, which includes FAQs relating to Diverse Slates.

Based on clarification from the Determination (Determination, at 23), NIKE further states that the Diverse Slates process was mainly driven by the Talent Acquisition team. The Diverse Slates guidelines applied to U.S. based Global Grade 50+ above roles at NIKE. NIKE confirms that there are no Diverse Slates practices or guidelines currently in effect for any U.S. Corporate employee roles.

NIKE's investigation is ongoing, and NIKE therefore reserves its right to amend or supplement its responses and objections and to continue producing documents on a rolling basis. NIKE is willing and prepared to meet and confer regarding this Request should the EEOC determine additional information is needed for a complete response.

**Request No. 8:**

Produce all job vacancies where "Diverse Slates" was utilized from June 1, 2018, to the present.

**Response to Request No. 8:**

NIKE objects to the Request on the grounds that it is overbroad, unduly burdensome, vague, ambiguous, and disproportionate to the needs of the investigation, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of relevant or admissible evidence regarding the Charge.

NIKE further objects that the phrase "was utilized" is vague and ambiguous in context.

NIKE further objects to the temporal scope beginning on June 1, 2018, on the grounds that any allegedly discriminatory acts occurring before November 26, 2023 are time-barred and therefore irrelevant to the EEOC's investigation. Nike also objects on the grounds that June 1, 2018 is prior to the timeframe identified in the Charge (fiscal year 2020).

NIKE further objects on the grounds that the Request is vague and ambiguous as to how NIKE could "produce" "job vacancies."

NIKE further objects to the EEOC seeking this information by Subpoena even though the EEOC never requested this information through an RFI before issuing this Subpoena—a violation of Section 24.1 of its Compliance Manual.

NIKE further objects that, to the extent the Request is intended to seek information to support a disparate impact analysis, it is improper for violating controlling federal policy. *See* Exec. Order 14281, "Restoring Equality of Opportunity and Meritocracy" (Apr. 23, 2025), available at https://www.whitehouse.gov/presidential-actions/2025/04/restoring-equality-of-opportunity-and-meritocracy/.

Subject to and without waiving the foregoing objections, NIKE responds as follows: NIKE confirms that there are no Diverse Slates practices or guidelines currently in effect for any U.S. Corporate employee roles.

NIKE's investigation is ongoing, and NIKE therefore reserves its right to amend or supplement its responses and objections and to continue producing documents on a rolling basis. NIKE is willing and prepared to meet and confer regarding this Request should the EEOC determine additional information is needed for a complete response.

**Request No. 9:**

For Respondent's "DEI Mentorship Program", "Amplify Program", "CNEXT Accelerate Program", "Connected Leaders Academy: Mc Kinsey & Company Executive Leadership Program and McKinsey & Company's Black, Asian, and Hispanic Management Accelerators", "Marketing Vanguard Program", "Serena Williams Design Crew (SWDC) Program", "Converse All Star Design Team Program", "Nike Internship Program(s)", "Native American & Indigenous Leaders Program", "Human Resources Rotational Associate Program", "NikeUNITED Program", "ConverseUNITED Program", "Xcelerate Program", "Focused Leadership Development Program", "Leadership Education for Asian Pacifics", and "Leading Nike Program" identify and describe:

a.      The dates Respondent utilized the program;

b.      The purpose and / or goals of the program;

c.      The departments and positions covered by the program;

d.      Eligibility criteria for the program;

e.      The name, job title, and department of each individual responsible for the operation of the program;

f.      Any third-party vendors involved with the program, including the name, job title, phone number, and email address for Respondent's point of contact with the vendor;

g.      Whether and how the program achieved its purpose; and

h.      If Respondent no longer utilizes the program, the reasons for its termination and identification of the person(s) who decided to terminate the program.

**Response to Request No. 9:**

NIKE objects to the Request on the grounds that it is overbroad, unduly burdensome, vague, ambiguous, and disproportionate to the needs of the investigation, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of relevant or admissible evidence regarding the Charge. The following "programs" identified in this Request are not mentioned, identified, or described in the Charge and thus exceed its scope: "Serena Williams Design Crew (SWDC) Program;" "Converse All Star Design Team Program;" "Nike Internship Programs;" "Human Resources Rotational Associate Program;" "NikeUNITED Program;" "ConverseUNITED Program;" "Xcelerate Program;" "Focused Leadership Development Program;" "Leadership Education for Asian Pacifics;" and "Leading Nike Program." The EEOC's unexplained expansion of this list, to encompass almost twice as many programs, underscores the overbroad, unduly burdensome, arbitrary, and capricious nature of this Request.

NIKE further objects to this Request on the grounds that certain of these "programs," including but not limited to CNEXT Accelerate, are not NIKE-created or NIKE-implemented programs. NIKE does not have possession, custody, or control of the information requested related to external third-party programs.

NIKE further objects to the EEOC seeking this information by Subpoena even though the EEOC never requested some of this information through an RFI before issuing this Subpoena—a violation of Section 24.1 of its Compliance Manual.

NIKE further objects that the Request is temporally overbroad insofar as it seeks information before the date of November 26, 2023. Indeed, this Request contains no limitation as to time whatsoever, making it facially overbroad.

NIKE further objects that this Request is overbroad in geographic scope. NIKE has a global workforce and therefore this Request potentially seeks information related to individuals across the world.

NIKE further objects to this Request to the extent it seeks information that is protected from disclosure by the attorney-client privilege and/or the work product doctrine.

NIKE further objects to the undefined terms and phrases "eligibility criteria," "responsible for the operation of," and "involved with the program" as vague and ambiguous in context.

NIKE further objects that, to the extent the Request is intended to seek information to support a disparate impact analysis, it is improper for violating controlling federal policy. *See* Exec. Order 14281, "Restoring Equality of Opportunity and Meritocracy" (Apr. 23, 2025), available at https://www.whitehouse.gov/presidential-actions/2025/04/restoring-equality-of-opportunity-and-meritocracy/.

NIKE further objects to disclosing detailed personal information concerning "individuals" and "third-party vendors," as this would infringe upon the privacy rights of those individuals and entities, and NIKE further objects to the Request to the extent it seeks documents containing sensitive business information, including performance metrics and communications and private information about third parties, and to the extent it encompasses documentation of confidential deliberations and other competitively sensitive business records wholly unrelated to any specific employment decision or alleged discriminatory practice at issue. Disclosure of such materials would infringe on privacy rights and implicate confidential business information. NIKE is not obligated to produce such materials absent a compelling showing of relevance and necessity, which the EEOC cannot make, and appropriate safeguards. *See, e.g., Buergofol GmbH*, 2025 WL 1593079, at *2; *Flat Branch Mortg., Inc.*, 2025 WL 1914164, at *5 n.5; *Warner Chilcott Ltd*., 2017 WL 4084045, at *2; *Poulos*, 2010 WL 2640396, at *3; *Litton Indus.*, 129 F.R.D. at 530.

NIKE further objects as unnecessary, duplicative, and unduly burdensome on the grounds that NIKE has previously provided substantive responses containing information and documents concerning several of the specific "programs" identified in this Request (in addition to others identified in prior RFIs), including "DEI Mentorship Program," "Amplify Program," "Marketing Vanguard Program," "CNEXT Accelerate Program," McKinsey & Company's Black Leadership Academy and Management Accelerators," sponsorship of or work with any third-party organizations or vendors focused on "targeted leadership development for Native American & Indigenous leaders," and the Human Resources Rotational Associate Program. NIKE again

refers the EEOC to those prior responses and to the documents and attachments produced therewith.

Subject to and without waiving the foregoing objections, and in consideration of the EEOC's modifications to this Request pursuant to the Determination, NIKE responds as follows:

Pursuant to the EEOC's request (Determination, at fn. 4) regarding information related to the McKinsey & Company's Black Leadership Academy and Management Accelerators, "sponsorship of or work with any third-party organizations or vendors focused on 'targeted leadership development for Native American & Indigenous leaders," and the Human Resources Rotational Associate Program, NIKE directs the EEOC to its May 6, 2025 response to the EEOC's Second RFI at p. 18.

NIKE is working to collect and agrees to produce responsive information as modified by the Determination for the remaining identified programs and will do so on a rolling basis.

NIKE's investigation is ongoing, and NIKE therefore reserves its right to amend or supplement its responses and objections. NIKE is willing and prepared to meet and confer regarding this Request should the EEOC determine additional information is needed for a complete response.

**Request No. 10:**

For each program identified in Request 9 above, produce a sortable database (such as Excel (.xls) or comma delimited file (.csv)), with the first database row containing the field or variable names of the requested information and each subsequent row containing the requested information for each individual, identifying all individuals who applied to, were considered for, were accepted to / selected for, or were rejected from / not selected for the program from June 1, 2019 through the present, including:
a.    First name;
b.    Last name;
c.    Employee number or unique identifier;
d.    Date of birth;
e.    Race / Ethnicity;
f.    Home address;
g.    Mobile phone number;
h.    Email address;
i.    Date of hire, if applicable;
j.    Date of separation, if applicable;

k.      Reason for separation, if applicable;

l.      Date of application to the program, if applicable;

m.      Date of consideration for the program, if applicable;

n.      Date of acceptance to / selection for the program, if applicable;

o.      Date of rejection from / non-selection to the program, if applicable;

p.      Positions held with Respondent, including dates in each position; and

q.      Date each position was held with Respondent.

**Response to Request No. 10:**

NIKE objects to this Request, as modified by the Determination, on the grounds that it is overbroad, unduly burdensome, vague, ambiguous, and disproportionate to the needs of this investigation, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of relevant or admissible evidence regarding the Charge. The Request demands detailed information regarding every employee who "applied to, were considered for, were accepted to / selected for, or were rejected from / not selected" any of 16 "programs," many of which are not mentioned, identified, or described in the Charge and thus exceed its scope. And if, for example, a "program" was open to all NIKE employees and did not require applications from employees, this Request would implicate the entire employee population at NIKE because while some employees may have been "selected" for the "program," the rest of the employee population was "not selected."

NIKE further objects to undefined term "considered for" and "non-selection to" as vague and ambiguous in context.

NIKE further objects that this Request, like several prior requests, appears again to be a classic "fishing expedition," where because the underlying Charge lacks a single aggrieved individual, the EEOC appears to want NIKE to produce a list of employees who were not selected for one or more "programs," along with their personal contact details, so the EEOC can contact them in the "idle hope" that they will find one who will say that they believe the reason for their treatment was discriminatory. *See, e.g., United Air Lines, Inc.*, 287 F.3d at 653; *BASF Corp.*, 2003 WL 21219038, at *2. This approach is the opposite of a typical EEOC investigation. Judicial enforcement of this Request would be improper since it is "too indefinite" and "has been made for an illegitimate purpose." *Shell Oil Co.*, 466 U.S. at 72 n.26. Such a sweeping inquiry is not tethered to any specific employment practice alleged to be discriminatory and exceeds the EEOC's investigatory authority.

NIKE further objects to the EEOC seeking this information by Subpoena even though the EEOC never requested this information through an RFI before issuing this Subpoena—a violation of Section 24.1 of its Compliance Manual.

NIKE further objects that the Request is temporally overbroad insofar as it seeks information before the date of November 26, 2023. Indeed, this Request contains no limitation as to time whatsoever, making it facially overbroad.

NIKE further objects that this Request is overbroad in geographic scope. NIKE has a global workforce and therefore this Request potentially seeks information related to individuals across the world.

NIKE further objects that, to the extent the Request is intended to seek information to support a disparate impact analysis, it is improper for violating controlling federal policy. *See* Exec. Order 14281, "Restoring Equality of Opportunity and Meritocracy" (Apr. 23, 2025), available at https://www.whitehouse.gov/presidential-actions/2025/04/restoring-equality-of-opportunity-and-meritocracy/.

NIKE further objects to the Request to the extent it seeks documents containing sensitive employee information. Disclosure of such materials would infringe on employee privacy rights and implicate confidential deliberations and other sensitive business information wholly unrelated to any specific employment decision or alleged discriminatory practice at issue. NIKE is not obligated to produce such materials absent a compelling showing of relevance and necessity, which the EEOC cannot make, and appropriate safeguards. *See, e.g., Buergofol GmbH*, 2025 WL 1593079, at *2; *Flat Branch Mortg., Inc.*, 2025 WL 1914164, at *5 n.5; *Warner Chilcott Ltd.*, 2017 WL 4084045, at *2; *Poulos*, 2010 WL 2640396, at *3; *Litton Indus.*, 129 F.R.D. at 530.

NIKE is willing and prepared to meet and confer regarding this Request.

## Request No. 11:

For each individual identified in response to Request 10 above, produce a copy of each individual's personnel file and all documents related to their application to, consideration for, acceptance to, selection for, rejection from, non-selection for, and participation in the program.

**Response to Request No. 11:**

NIKE objects to this Request, as modified by the Determination, on the grounds that it is overbroad, unduly burdensome, vague, ambiguous, and disproportionate to the needs of this investigation, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of relevant or admissible evidence regarding the Charge. The Request seeks the complete personnel file of every individual who "applied to, were considered for, were accepted to / selected for, or were rejected from / not selected" any of 16 "programs," which is unreasonably broad and unduly burdensome, as it could include all NIKE employees, as well as "all documents" related to their involvement or non-involvement in those "programs." "All documents" related to every employee involved in those programs would already be massively overbroad and unduly burdensome, but to the extent this Request further seeks "all documents" concerning the non-selection of every employee who was not selected for these programs, this Request is fatally unclear as to what the EEOC seeks and "too indefinite" to be enforced. *Shell Oil Co.*, 466 U.S. at 72 n.26.

NIKE further objects to the Request on the grounds that many of the "programs" identified above are not mentioned, identified, or described in the Charge and thus exceed its scope.

NIKE further objects to undefined term "considered for" and "non-selection for" as vague and ambiguous in context.

This Request, like several prior requests, appears again to be a classic "fishing expedition," where because the underlying Charge lacks a single aggrieved individual, the EEOC appears to want NIKE to produce a list of employees who were not selected for one or more "programs," along with their personal contact details, so the EEOC can contact them in the "idle hope" that they will find one who will say that they believe the reason for their treatment was discriminatory, even though they never complained to the EEOC or to NIKE. *See, e.g., United Air Lines, Inc.*, 287 F.3d at 653; *BASF Corp.*, 2003 WL 21219038, at *2. This approach is the opposite of a typical EEOC investigation. Judicial enforcement of this Request would be improper since it is "has been made for an illegitimate purpose." *Shell Oil Co.*, 466 U.S. at 72 n.26. Such a sweeping inquiry is not tethered to any specific employment practice alleged to be discriminatory and exceeds the EEOC's investigatory authority.

NIKE further objects to the EEOC seeking this information by Subpoena even though the EEOC never requested this information through an RFI before issuing this Subpoena—a violation of Section 24.1 of its Compliance Manual.

NIKE further objects that the Request is temporally overbroad insofar as it seeks information before the date of November 26, 2023. Indeed, this Request contains no limitation as to time whatsoever, making it facially overbroad.

NIKE further objects that, to the extent the Request is intended to seek information to support a disparate impact analysis, it is improper for violating controlling federal policy. *See* Exec. Order 14281, "Restoring Equality of Opportunity and Meritocracy" (Apr. 23, 2025), available at https://www.whitehouse.gov/presidential-actions/2025/04/restoring-equality-of-opportunity-and-meritocracy/.

NIKE further objects to the Request to the extent it seeks documents containing sensitive employee information, including personnel files of huge numbers, if not all of, NIKE's employees. Disclosure of such materials and other documents sought by this Request would infringe employee privacy rights and implicate confidential deliberations and other sensitive business information wholly unrelated to any specific employment decision or alleged discriminatory practice at issue. NIKE is not obligated to produce such materials absent a compelling showing of relevance and necessity, which the EEOC cannot make, and appropriate safeguards. *See, e.g., Poulos*, 2010 WL 2640396, at *3 (limiting discovery of personnel files to "those of employees whose action or inaction has a direct bearing on the Plaintiff's claims" (emphasis added)); *see also, e.g., Buergofol GmbH*, 2025 WL 1593079, at *2; *Flat Branch Mortg., Inc.*, 2025 WL 1914164, at *5 n.5; *Warner Chilcott Ltd.*, 2017 WL 4084045, at *2; *Litton Indus., Inc.*, 129 F.R.D. at 530.

NIKE is willing and prepared to meet and confer regarding this Request.

**Request No. 12:**

Respondent's FY20 Impact Report states that Respondent "intend[ed] to give all of Respondent's Vice Presidents access to representation data with sharp accountability to deliver on their Diversity & Inclusion (D&I) plans." Related to that statement, identify and produce:
a.      All training, guidance and instructions provided to all employees who were given access to the representation data;
b.      Documents describing all other job positions which were provided access to the representation data;
c.      Produce a copy of the representation data to which each Vice Presidents was given access; and
d.      Produce a copy of the representation data to which any other employees were given access.

*January 27, 2026*
*Page 28 of 31*

**Response to Request No. 12:**

NIKE objects to the Request on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the investigation, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of relevant or admissible evidence regarding the Charge. The Request seeks, among other overbroad categories, "[a]ll training guidance and instructions provided to all employees who were given access to the representation data," regardless of whether such training, guidance, or instructions have anything to do with the allegations in the Charge.

NIKE further objects that the Request is temporally overbroad insofar as it seeks information only about FY20, long before applicable limitations period began on November 26, 2023.

NIKE further objects to the EEOC seeking this information by Subpoena even though the EEOC never requested some of this information through an RFI before issuing this Subpoena—a violation of Section 24.1 of its Compliance Manual.

NIKE further objects to this Request to the extent it seeks information that is protected from disclosure by the attorney-client privilege and/or the work product doctrine.

NIKE further objects to the Request to the extent it seeks documents containing sensitive employee information and to the extent it encompasses documentation of confidential deliberations and other competitively sensitive business records wholly unrelated to any specific employment decision or alleged discriminatory practice at issue. Disclosure of such materials would infringe on employee privacy rights and implicate confidential business information. NIKE is not obligated to produce such materials absent a compelling showing of relevance and necessity, which the EEOC cannot make, and appropriate safeguards. *See, e.g., Buergofol GmbH*, 2025 WL 1593079, at *2; *Flat Branch Mortg., Inc.*, 2025 WL 1914164, at *5 n.5; *Warner Chilcott Ltd.*, 2017 WL 4084045, at *2; *Poulos*, 2010 WL 2640396, at *3; *Litton Indus., Inc.*, 129 F.R.D. at 530.

Subject to and without waiving the foregoing objections, NIKE responds as follows:

Pursuant to the Determination's clarifications of this Request (Determination, at 25), NIKE agrees to provide certain documents and information responsive to this Request and will do so on a rolling basis.

NIKE is willing and prepared to meet and confer regarding this Request should the EEOC determine additional information is needed for a complete response.

***

As noted above, we remain available and willing to meet and confer regarding the Subpoena, the above responses, and related document production, which will continue to be provided on a rolling basis. NIKE aims to provide additional documents and information by the week of February 9, 2026.

Sincerely,
King & Spalding LLP

**Amanda A. Sonneborn**

*AAS*

## <u>PROOF OF SERVICE</u>

I, the undersigned, declare:  I am a citizen of the United States, over 18 years of age and not a party to the within action.  I am employed in the County of Los Angeles; my business address is 633 West Fifth Street, Suite 1600, Los Angeles, CA 90071.

On the date specified below, I caused to be served a copy of the foregoing document described as: **Respondent's Supplemental Response to Subpoena No. SL-25-08** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

☐　　**BY U.S. MAIL**:  I am personally and readily familiar with the business practice of King & Spalding LLP for collection and processing of correspondence for mailing with the United States Postal Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at Los Angeles, California.

☐　　**BY MESSENGER SERVICE**:  By consigning the document(s) to an authorized courier and/or process server for hand delivery on this date.

☒　　**BY EEOC**: I personally transmitted true and correct copies of the above-described documents via the user interface at EEOC Portal. to the persons named on the service list originating from the King & Spalding LLP mail server, which did not report any error in sending the transmission.

☒　　**BY ELECTRONIC SERVICE**:  By electronically mailing a true and correct copy through King & Spalding LLP's electronic mail system to the email addresses set forth below.

☐　　**BY PERSONAL DELIVERY**:  I caused such envelope to be delivered by hand to the offices of each addressee below.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 27, 2026, at Los Angeles, California.

_____
Erica Row

## SERVICE LIST:

David Davis
District Director
US Equal Employment Opportunity
Commission
1222 Spruce, Rm 8.100
St. Louis, MO 63103
David.Davis@eeoc.gov

Ahlam Abdellatif
Investigator
US Equal Employment Opportunity
Commission
450 Golden Gate Avenue
5 West P.O. Box 36025
San Francisco, CA 94102
Ahlam.Abdellatif@eeoc.gov