IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

          Applicant,

    v.

NIKE, INC.,

          Respondent.

Honorable Cristian Stevens

Case No. 4:26-mc-00128-CMS

## **DECLARATION OF MICHELLE McCRAY**

1.      I am Michelle McCray and am employed at NIKE, Inc. ("NIKE" or "the Company") as its VP, Global People Solutions.  I make this declaration in support of NIKE's Opposition to the Equal Employment Opportunity Commission's ("EEOC") Application to Show Cause ("Application") as well as NIKE's Motion to Transfer, in the above-captioned matter.

2.      In January 2022, I first became employed at NIKE as its Senior Director, HRCOS Transformation Lead, within the Human Resources team.  In January 2023, I was promoted to the VP, People Solutions – Teammate Experience and Delivery role, also in Human Resources.  As a member of the Human Resources Leadership Team, I oversee and have personal knowledge of NIKE's employee records and human resources systems and processes.

3.      I understand that NIKE was served with the EEOC's Subpoena ("Subpoena") on October 1, 2025, which includes 12 enumerated requests (in addition to 58 sub-categories therein) for information and documents ("Requests").  I have reviewed these Requests, am familiar with the location of records that may be responsive to the Requests, and am competent to identify sources of information and documents potentially responsive to the Requests.

4.      I have personal knowledge of the contents of this declaration based on my role at NIKE, or have knowledge based on my review of information and records gathered by NIKE personnel, and could testify thereto.

### NIKE's Matrixed Structure

5.      NIKE is a corporation headquartered in Beaverton, Oregon and incorporated under the laws of the State of Oregon.  NIKE's principal place of business and corporate headquarters is located in Beaverton, Oregon ("Headquarters").

6.      NIKE is a global leader in the design and development of athletic footwear, apparel, equipment, accessories, and services.

7.      NIKE maintains a highly matrixed and cross-functional organizational structure.  It does not have formally designated "departments," but rather generally is organized in terms of brands, geographies, functions, teams and/or other structures (e.g., sports or consumer type).  Employees may have both direct and dotted-line reporting relationships.

8.      Employment decisions such as hiring, compensation, promotion, and termination, are typically made by the direct supervisor for a particular employee or position.  Depending on the circumstances and position at issue, however, additional or more senior stakeholders may be involved in an employment decision.  Accordingly, documents concerning a single employment decision may be located in multiple places within the company, in the possession of multiple custodians potentially located in different physical locations.  There is no single location or source that contains all documents concerning the company's employment decisions.

9.      As of March 10, 2026, NIKE's United States Corporate Workforce consists of approximately 9,586 full-time employees.  Approximately, 8,969 such employees work in Oregon.  Only 9 NIKE employees reside in Missouri.  Each of these employees report to Headquarters.

10.     Since January 1, 2024, NIKE has conducted several reductions-in-force.  During that time, approximately 1,700 employees have separations coded as a "Reduction in Force."  Of those approximately 1,700 employee separations, approximately 1,450 separated employees worked in Oregon from Headquarters.

11.     Since January 1, 2024, NIKE has hired approximately 1,368 individuals to its United States Corporate Workforce.

**Location of Potential Witnesses**

12.     I reside in Oregon and work at Headquarters.

13.     Approximately 94% of NIKE's U.S. corporate employees are based in Oregon.

14.     The witnesses with knowledge of, and who can speak to, the completeness of the documents and information potentially responsive to the Requests all work from Headquarters and likewise reside in or around Beaverton, Oregon.

15.     All U.S.-based executives of NIKE have maintained a residence in Oregon since at least June 1, 2019.  None reside in Missouri.

16.     Employees responsible for Human Resources information technology management and support as well as the employees responsible for NIKE's Human Resources data management systems work from Headquarters.  No such employee is located in Missouri.

17.     I understand that the Request Nos. 2-4 seek documents and information regarding certain "layoffs" that occurred at NIKE from January 1, 2024 to the present.  I understand that the term "layoff" refers to corporation restructures as well as reductions in force.  Since January 1, 2024, many of the U.S. Corporate restructures and reductions in force have been administered and processed through NIKE's Organization Transformation Solutions ("OTS") team.  The OTS team at NIKE is primarily based at Headquarters.  None of the members of the OTS team reside in Missouri.  All other teams and leaders involved in making decisions related to or carrying out various processes related to

activating restructures and reductions in force for NIKE's U.S. corporate employees are primarily based in Headquarters. This includes various Human Resources teams, Legal, and Finance, as well as the leaders who set the reorganization strategy, determine the scope of any workforce reduction, and make specific employee impact decisions. None of these employees reside in Missouri.

18. I understand that Request No. 5 seeks documents and information regarding executive compensation. All such compensation decisions are made by and in consultation with employees who work from Headquarters.

19. I understand that Request No. 6 seeks data tracking the racial demographics of NIKE's employees. All EEO-1 reporting concerning NIKE's U.S. corporate employees is compiled and maintained by employees who work from Headquarters. Likewise, to the extent NIKE tracked or monitored demographic information regarding its employees, any employees responsible for such tracking and monitoring work from Headquarters.

20. To the extent any of the "programs" that are identified in Request No. 9 have ever been administered by NIKE, no such "programs" were or are administered in Missouri. To the extent any "program" identified in Request No. 9 was managed or administered by NIKE, the employees with knowledge of the administration of the "program" work in Oregon from Headquarters.

**Location of Documents**

21. Based on my understanding of the Requests, to the extent any hardcopy documents must be reviewed and produced in connection with the Subpoena, the vast majority of such documents are housed and maintained in Oregon, and no such documents regarding U.S. corporate employees would be in Missouri.

22. Electronically stored information ("ESI") that could be produced in response to the Requests is also maintained in Oregon. Employees with authorization to access or administer access to such ESI work in Oregon. No such employees work in Missouri.

23.     No Human Resources documents regarding U.S. corporate employees are maintained in Missouri.  Human Resources-related documents regarding U.S. corporate employees are primarily maintained by NIKE at Headquarters.

24.     No documents related to NIKE's executive compensation are maintained in Missouri. Executive compensation documents are maintained by NIKE at Headquarters.

25.     No documents related to NIKE's U.S. corporate employee layoffs are maintained in Missouri.  The vast majority of documents related to restructures and reductions in force are maintained by NIKE at Headquarters.

### Previous Equal Employment Opportunity Commission Investigations

26.     In the past 10 years, I am not aware of any Charge of Discrimination filed with the EEOC's St. Louis District Office that was brought by a U.S. Corporate employee of NIKE.

27.     In the past 10 years, NIKE has not received a Charge of Discrimination filed with the EEOC involving a U.S. Corporate employee of NIKE that resided in Missouri.

### Burden of Responding to the EEOC's Request Nos. 2-4

28.     I understand that Request Nos. 2-4 request documents and information from January 1, 2024 to the present relating to "specific criteria and/or factors used to evaluate and select employees for layoff," "staffing plans, restructuring plans, and similar documents related to the layoff," "all documents created during the process of evaluating and selecting employees for employees," "documents regarding severance packages, rehire eligibility, and other options for benefits," and information related "non-layoff" separations.  Because of the nature of NIKE's operations as well as the number of employment decisions conceivably implicated by the Subpoena's definition of "layoff" and "non-layoff" separations, in order to respond to these Request, NIKE, at a minimum, would need to execute the following steps:

a. Collect, review, and compile data from multiple tracking systems, platforms, and databases to compile a list of "U.S. Corporate" employees and positions that have been terminated since January 1, 2024;

b. Determine which of these terminations fall under the Subpoena's definition of "layoff";

c. Interview representatives across the organization to determine (i) who made the layoff decision, (ii) who participated in the layoff decision, (iii) the type of documents that the relevant group maintains relating to the termination, (iv) where and how those documents are maintained (physical or digital files or tracking system), and (v) all potential custodians of relevant documents;

d. Collect the documents of all potential custodians, including former employees;

e. Engage a vendor to collect and host all electronically stored information ("ESI");

f. Review all emails, correspondence, and documents (including digital and physical files) in order to identify every single "document[] created during the process of evaluating and selecting employee for layoff";

g. Interview each employee involved in any layoff decision to determine "the specific criteria and/or factors used to evaluate and select employees for layoff"; and, for each employee not selected for "layoff," the "[r]eason for . . . non-selection for layoff"; and

h. Interview each employee involved in any non-layoff separation decision to determine the "[r]eason for non-layoff separation[.]"

29. Once the above information is collected, for each "layoff" and "non-layoff" since January 1, 2024, NIKE would need to review, analyze, synthesize, organize, and prepare the requested

sortable database (which currently does not exist) with the 18 sub-categories of information identified in Request No. 4.

30. The work described above would require substantial time away from NIKE employees' regular job duties and responsibilities. Based on my knowledge and experience I estimate that performing the work described above could require substantially more than one hour per separation decision. Even if vendors and attorneys were utilized, at additional costs to NIKE, to collect and review documents and ESI, a human resources employee may need to interview hundreds of relevant stakeholders and decisionmakers to determine what criteria or factors were used to evaluate and select employees regarding several thousands of employment separations.

**Burden of Responding to the EEOC's Request Nos. 9-11**

31. I understand that Request Nos. 9-11 seek documents related to 16 different "programs" and specifically request information and documents identifying, among other things, the "[e]ligibility criteria for the program," identification of "each individual responsible for the operation of the program," "third-party vendors involved with the program," "whether and how the program achieved its purpose," and "reasons for its termination."

32. I am not aware of a single NIKE human resources electronic database or system that collects, tracks, or maintains all of the information requested in Request No. 9—i.e., purpose or goals of a "program"; eligibility criteria for a "program"; third-party vendors involved with a "program" (and their information); whether and how a "program" achieved its purpose; and the reasons for terminating a "program."

33. I am not aware of a single NIKE human resources electronic database or system that collect, tracks, or maintains all of the information requested in Request No. 10 relating to "all individuals who applied to, were considered for, were accepted to /selected for, or were rejected from / not selected for" the identified "programs."

34.     Because I am not aware of a single source for the information requested in Request Nos. 9-11, in order to collect the requested information, NIKE would need to identify the source or location of physical or electronic documents related to each specific "program", interview stakeholders (which may include former employees and third-party vendors) for that "program", and collect and review any information they may have relating to applicants and participants dating back to June 1, 2019.

35.     The work described above would require substantial time away from NIKE employees' regular job duties and responsibilities.

36.     Complying with Request Nos. 2-4 and 9-11 alone would burden NIKE's business and operations by causing NIKE to devote thousands of work hours across multiple functions to collect and review documents, interview witnesses, work with vendors and attorneys, and create the requested databases summarizing the requested information.   Furthermore, business operations would be disrupted by requiring supervisors or managers at every level in all groups across the organization to respond to document and information requests and participate in hours of interviews regarding information and events dating back several years.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 16, 2026 at Beaverton, Oregon.

*Michelle McCray*
Michelle McCray (Mar 16, 2026 11:51:42 PDT)

Michelle McCray