IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Applicant, <br><br> v. <br><br> NIKE, INC., <br><br> Respondent. | Honorable Cristian Stevens <br><br> Case No. 04:26-mc-00128 |

**RESPONDENT NIKE, INC.'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS AND/OR TRANSFER**

**Dated:** April 9, 2026

Respectfully submitted,

NIKE, INC.

By: _/s/ Amanda A. Sonneborn_

| | |
|---|---|
| Amanda A. Sonneborn* <br> Andrew R. Cockroft* <br> KING & SPALDING LLP <br> 110 N Wacker Drive <br> Suite 3800 <br> Chicago, IL 60606 <br> Tel: (312) 995-6333 <br> asonneborn@kslaw.com <br> acockroft@kslaw.com <br><br> Andrew Michaelson* <br> KING & SPALDING LLP <br> 1290 6th Ave., 14th floor <br> New York, NY 10104 <br> Tel: (212) 556-2100 <br> amichaelson@kslaw.com | Jeff B. Jensen <br> TORRIDON LAW PLLC <br> 13354 Manchester Rd., Suite 210 <br> St. Louis, Missouri 63131 <br> Tel: (314) 920-0138 <br> jjensen@torridonlaw.com <br><br> Tara Helfman* <br> Genevieve M. Kelly* <br> TORRIDON LAW PLLC <br> 801 Seventeenth Street NW, <br> Suite 1100 <br> Washington, DC 20006 <br> Tel: 202.249.6900 <br> thelfman@torridonlaw.com <br> gkelly@torridonlaw.com |

*Pro hac vice admitted

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..........................................................................................................................1

ARGUMENT ...............................................................................................................................2

I.  Dismissal for Improper Venue is Appropriate ...................................................................2

    A.  The EEOC Cannot Meet Its Burden to Establish that Its Investigation Is Carried On in this District ...................................................................................................................2

    B.  The EEOC Cannot Meet its Burden to Establish that NIKE Transacts Business in this District .........................................................................................................................5

        1.  Assertions of "Commingling" Employment Opportunities are Inaccurate and Fail as a Matter of Law ..........................................................................................5

        2.  The EEOC Cannot Rely on Caselaw Interpreting the Clayton Act to Meet its Burden ....7

II.  Alternatively, the Court Should Exercise its Discretion to Transfer this Matter to the District of Oregon ............................................................................................................9

CONCLUSION ...........................................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Home Healthcare Sys., Inc. v. Floyd Mem'l Hosp. & Health Servs.*,
 2017 WL 2261740 (W.D. Ky. May 23, 2017)........................................................................9

*In re Apple, Inc.*,
 602 F.3d 909 (8th Cir.2010)................................................................................................10

*Bally's Park Place, Inc. v. NLRB*,
 546 F.3d 318 (5th Cir. 2008).............................................................................................7, 8

*Call Carl, Inc. v. BP Oil Corp.*,
 391 F. Supp. 367 (D. Md. 1975).............................................................................................8

*Campos v. Ticketmaster*,
 140 F.3d 1166 (8th Cir. 1998) ...............................................................................................8

*Dube v. Wyeth LLC*,
 943 F. Supp. 2d 1004 (E.D. Mo. 2013)................................................................................10

*Farah Mfg. Co. v. NLRB*,
 481 F.2d 1143 (8th Cir. 1973) ........................................................................................ 10, 11

*FTC v. Jim Walter Corp.*,
 651 F.2d 251 (5th Cir. 1981)..............................................................................................2, 3

*FTC v. MacArthur*,
 532 F.2d 1135 (7th Cir. 1976) ...........................................................................................2, 3

*FTC v. W. Gen. Dairies, Inc.*,
 432 F. Supp. 31 (N.D. Cal. 1977) ..........................................................................................4

*Hansen v. Nw. Univ.*,
 No. 24 C 9667, 2025 WL 2731378 (N.D. Ill. Sept. 24, 2025)..............................................9

*Huer Huang v. Shanghai City Corp.*,
 459 F. Supp. 3d 580 (S.D.N.Y. 2020)....................................................................................7

*Kolb v. Chrysler Corp.*,
 357 F. Supp. 504 (E.D. Wis. 1973)........................................................................................8

*Larson v. Isle of Capri Casinos, Inc.*,
 No. 16-00902-CV-W-ODS, 2018 WL 6495074 (W.D. Mo. Dec. 10, 2018) .......................6

*NLRB v. Cooper Tire & Rubber Co.*,
  438 F.3d 1198 (D.C. Cir. 2006) ........................................................................................... 1, 2, 4

*U.S. v. Scophony Corp. Of Am.*,
  333 U.S. 795 (1948) ................................................................................................................... 7

**Statutes**

29 U.S.C. § 161(2) ...........................................................................................................*passim*

Clayton Act ................................................................................................................... 5, 7, 8, 9

29 U.S.C. § 160(f) ............................................................................................................................ 7

## INTRODUCTION

The EEOC's Brief in Opposition (*see* ECF No. 25 (the "Opposition")) confirms that this Court should grant Nike, Inc.'s ("NIKE") Motion to Transfer (ECF No. 11) and dismiss the Application for improper venue or, alternatively, transfer this proceeding to the District of Oregon.

To begin, it is the EEOC—not NIKE—that bears the burden of establishing venue is proper. The EEOC could have met its burden by demonstrating *either* that its "inquiry is carried on" *or* that NIKE "transacts business" in this District within the meaning of 29 U.S.C. § 161(2).  Its Opposition does neither.  Instead, on both prongs, the EEOC invites this Court to apply unprecedented and erroneous interpretations of law that, if adopted, would greatly expand the agency's powers and impose undue burdens on employers.  Simply stated, the EEOC's inquiry can be "carried on" *only* in a district that bears a reasonable relation to the subject matter of the inquiry—which this District does not.  *See NLRB v. Cooper Tire & Rubber Co.*, 438 F.3d 1198, 1201 (D.C. Cir. 2006).  No circuit has held to the contrary.  And to do so, as the EEOC urges here, would confer upon the EEOC a roving subpoena authority that would render the constraints on venue embodied in § 161(2) meaningless. The EEOC similarly invites the Court to commit error by contending that a parent "transacts business" in this District within the meaning of § 161(2) through the conduct of its subsidiaries.  That, too, is not the law.

Instead of clearing the relevant goalposts, the Opposition tries to move them.  This effort should be rejected, and the Application should be dismissed or transferred due to improper venue, or in the alternative, transferred as a matter of the Court's discretion.

## ARGUMENT

### I.    Dismissal for Improper Venue is Appropriate

#### A.    The EEOC Cannot Meet Its Burden to Establish that Its Investigation Is Carried On in this District

The EEOC principally contends that its "inquiry is carried on" in this District, within the meaning of § 161(2), because its St. Louis District Director represents that he is personally supervising the investigation and other local staff are working on it. *See* Opp. at 2-3. As far as NIKE can tell, however, the investigation has been led from inception to the present by an investigator based out of the EEOC's San Francisco District and Seattle Field Offices, and there have been no acts by employees in this District beyond the issuance of the Subpoena. The EEOC's vague and conclusory representations as to the involvement of the St. Louis District Office are insufficient to carry its burden. But at the end of the day, it does not matter. Even if the St. Louis District Office is involved in the investigation as the EEOC now contends, its inquiry *still* cannot be "carried on" in this District.

The EEOC's inquiry can be "carried on" *only in a district that bears a reasonable relationship to the subject matter under investigation.* That was the specific holding of the D.C. Circuit Court of Appeals, which concluded that where, as here, "the inquiry is an agency investigation . . . we focus on, among other things, the location of the *subject matter* of the inquiry." *Cooper Tire*, 438 F.3d at 1201 (emphasis in original). The EEOC contends that this interpretation of the NLRA's venue provision departs from the plain meaning of the text, but *Cooper Tire* expressly considered and rejected that argument. *Id.* ("This focus is not a gloss on the statutory terms that alters their plain meaning; rather, it is our effort to define those terms."). Indeed, it makes sense that an "inquiry" would be "carried on," in substantial part, by reference to the locus of the subject matter under investigation. And at least two circuits have held the same when interpreting identical language in the FTC venue statute. *See FTC v. Jim Walter Corp.*, 651 F.2d 251, 254 & n.3 (5th Cir. 1981); *FTC v. MacArthur*, 532 F.2d 1135, 1140 (7th Cir. 1976). Conversely, *no* circuit court has interpreted § 161(2) to mean that the NLRB or EEOC's

2

inquiry can be "carried on" in a jurisdiction that bears no reasonable relation to the location of the events being investigated.

Absent authority for its position, the EEOC makes a number of arguments that are unavailing. It argues that *Cooper Tire*'s interpretation renders the phrase "inquiry is carried on" superfluous because the statute separately provides for venue in any district in which the respondent "transacts business," and the "transacts business" clause would necessarily encompass the locus of the subject matter of the inquiry. *See* Opp. at 7. But that is not so. The phrase "transacts business" is not so broad, *see infra*, and there are many scenarios in which the EEOC may investigate conduct occurring in a district where the conduct at issue does not amount to "transact[ing] business" in the district (*e.g.,* employment law violations by remote employees working in the district). Indeed, the phrase "transacts business" does not refer to singular transactions or occurrences that could give rise to employment disputes, but it instead refers to a continuous, physical presence in a jurisdiction. *See* Mot. at 10.

The EEOC also contends that the FTC cases suggest that "an inquiry can be carried on in multiple places." *See* Opp. at 9. While that may be true, the cases specifically note that the subject matter of the investigation is an important factor when deciding where an investigation is "carried on." *See, e.g., Jim Walter Corp.*, 651 F.2d at 254 & n.3 (explaining that the government's choice of forum "might be unreasonable if the forum has no other connection with the inquiry and the subject matter of the investigation is centered on documents and activities in one specific locale"); *MacArthur*, 532 F.2d at 1140 (explaining that an inquiry is "carried on" in the venue where the "place and the activities occurring there bear a reasonable relation to the subject matter of the investigation."); *FTC v. W. Gen. Dairies, Inc.*, 432 F. Supp. 31, 33 (N.D. Cal. 1977) ("Under the FTC approach, it would be entitled to issue and enforce subpoenas in Alaska to respondents situated in, and on account of conduct being investigated in, Florida or New York. The court cannot believe Congress countenanced any such result.").

3

Ultimately, relying solely on the *dissent* in *Cooper Tire*, the EEOC urges the Court to adopt the unprecedented position that no reasonable relationship to the subject matter of the inquiry is necessary. It thereby invites this Court to broadly expand the EEOC's investigative powers by interpreting § 161(2) to confer upon the EEOC a roving subpoena authority that would allow it to enforce a subpoena against a Missouri business in San Francisco simply because the EEOC happened to assign the matter to a supervisor in San Francisco shortly before issuing a subpoena. *See Cooper Tire*, 438 F.3d at 1200 ("The NLRB's interpretation would, of course, give the NLRB the choice of any forum it liked, simply by locating its investigation in that jurisdiction[.]"). There is no precedent for that assertion for good reason—such an interpretation would newly empower the EEOC to compel employers to defend actions in jurisdictions unconnected to the conduct at issue in the inquiry. The Court should decline the EEOC's invitation to expand the power that Congress clearly limited.

In a meager attempt to meet what is plainly the correct legal standard, the EEOC contends that there is a relationship between the subject matter of its inquiry and this District because it is investigating "NIKE's employment practices nationwide." *See* Opp. at 8. But the subject of the EEOC's investigation is not nationwide: the EEOC is focused on decisions and actions taken by NIKE at its corporate headquarters in Oregon and affecting its employee base that is overwhelmingly located there. The EEOC claims that NIKE currently lists corporate job offerings in several states, *see id.*, but critically, *none of those states is Missouri*. In fact, NIKE has only nine employees located in Missouri, none of whom are entrusted with deciding or implementing the employment practices under review, and all of whom report to supervisors in Oregon. Tellingly, the Opposition does not claim that the EEOC is investigating any conduct of these employees or, for that matter, any conduct occurring in this State.

Therefore, on these facts, the EEOC cannot meet its burden of establishing that the subject matter of its inquiry bears a reasonable relation to this District.

4

**B.** **The EEOC Cannot Meet its Burden to Establish that NIKE Transacts Business in this District**

It is undisputed that NIKE does not reside in this District and that NIKE is not "found" in this District. *See* Mot. at 3, 10. All that remains for the Court to determine is whether NIKE "transacts business" in this District, and here, too, the key facts are not in dispute. It is undisputed that NIKE does not sell products to consumers in Missouri, that it is not registered to do business in Missouri, that it does not pay corporate taxes in Missouri, that it does not maintain facilities or offices in this District, that it employs only nine people in Missouri (who all report to headquarters in Oregon), and that NIKE observes corporate formalities with the subsidiaries that *do* sell products and manufacture goods here. These undisputed facts compel the conclusion that NIKE does not "transact business" in the District for purposes of § 161(2), *see id.*, and the EEOC cites no precedent to the contrary.

In its attempt to establish that NIKE "transacts business" in this District, the EEOC makes only two arguments. Without citation to authority, it asserts that NIKE's employment practices are not "wholly separate" from those of its subsidiaries. *See* Opp. at 4-5. It next argues that the Court should rely on caselaw interpreting the Clayton Act to find that NIKE "transacts business" in this District based solely on the conduct of its subsidiaries. *See id.* at 5-6. Both arguments lack merit.

**1.** **Assertions of "Commingling" Employment Opportunities are Inaccurate and Fail as a Matter of Law**

The EEOC speculates that NIKE's employment practices are not "wholly separate" from, but are rather commingled with those of its subsidiaries. *See* Opp. at 4-5. As proof, the Opposition points to a NIKE "gateway program" from 2020 pursuant to which "retail employees" may "pursue a corporate career," and a "Careers" website advertising open positions for corporate, retail, manufacturing, and distribution employment. *See* Opp. at 4. The undisputed evidence, however, demonstrates that NIKE and its subsidiaries are separate legal entities, that corporate formalities are observed, and that NIKE is not the employer of its subsidiaries' employees. *See* ECF No. 15 ("Nicolas

5

Decl.") ¶¶ 13, 18-24.  Indeed, the EEOC readily accepts this distinction in the Subpoena itself, in which it identifies the employees of NIKE as distinct and separate from the employees of its subsidiaries.  *See* ECF No. 13 ("Cockroft Decl."), Ex. Q at 21.

The "evidence" cited by the EEOC neither contradicts nor undermines this distinction.  The "gateway program" refers to career opportunities pursuant to which employees of the retail subsidiary, NRS (the "retail employees"), may leave their employment to pursue a different job with the parent, NIKE (the "corporate career").  If anything, this demonstrates the separate character of NRS and NIKE.  Similarly, the Careers website provides information about jobs either with NIKE or with its subsidiaries.  *See* Second Declaration of Michelle McCray ¶¶ 5-6.  The "Retail," "Distribution," and "Manufacturing" positions referenced in the Opposition are all open positions at subsidiaries, not at NIKE.  *See id.*

Of course, the existence of a website advertising jobs at both a parent and a subsidiary does not mean that the parent and subsidiary are one and the same, nor would it be sufficient to pierce the corporate veil.  Indeed, the EEOC's "evidence" does not establish that NIKE has *any* responsibility for the employment practices of subsidiaries, let alone enough for this Court to conclude that NIKE "transacts business" through its subsidiaries in this District.  *See Larson v. Isle of Capri Casinos, Inc.*, No. 16-00902-CV-W-ODS, 2018 WL 6495074, at *10 (W.D. Mo. Dec. 10, 2018) (granting summary judgment on plaintiffs "joint employment" theory where the alleged joint employer "maintained a website where applications for employment with [its] subsidiaries were submitted, no other information is provided. Presumably, [the alleged joint employer] could access the employment applications. But Plaintiff does not provide evidence that [the alleged joint employer] actually maintained these applications, or utilized them in any way to make hiring decisions."); *Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 587 (S.D.N.Y. 2020) ("It is not uncommon for two or more businesses that are run independently and manage their labor relations independently to use a single

6

website or a common name for marketing purposes. That does not make each responsible for the labor law violations of the other.") (collecting cases).[1]

### 2. The EEOC Cannot Rely on Caselaw Interpreting the Clayton Act to Meet its Burden

Finally, the EEOC asserts that cases interpreting the Clayton Act support the conclusion that NIKE "transacts business" in this District. *See* Opp. at 5. It first cites *U.S. v. Scophony Corp. Of Am.*, 333 U.S. 795, 807 (1948) for the general proposition that a corporation can be found to "transact business," under the Clayton Act, in any district in which it transacts business "of any substantial character." But in that case, while the defendant (Scophony) may have been London-based, its direct dealings in the relevant district were "continuous," *id.* at 810, and involved directly and actively participating in the creation of a joint venture there (American Scophony) that gave rise to the alleged antitrust violation. *Id.* at 811. Indeed, the defendant's activity in the relevant district was so extensive that the Court concluded it not only transacted business there but also could be "found" there. *Id.* at 818. Accordingly, even in cases arising under the Clayton Act (which this case does not), *Scophony* does not stand for the proposition that a parent can be found to transact business in a district through unrelated acts of subsidiaries with respect to which corporate formalities are observed.

The EEOC next cites *Campos v. Ticketmaster*, 140 F.3d 1166 (8th Cir. 1998), a Clayton Act case in which the panel concluded that a parent can be found to "transact business" in a district through the conduct of subsidiaries if the parent exerts a sufficient level of control over the subsidiary's conduct. But the *Campos* panel explained that this more expansive interpretation of "transacts business" under the Clayton Act was justified by unique antitrust interests specific to that statutory scheme, namely, that parental control over a subsidiary could be relevant to the venue analysis

---

[1] Whether NIKE advertises open positions to Missouri residents is irrelevant to whether it transacts business within the meaning of § 161(2). *See Bally's Park Place, Inc. v. NLRB*, 546 F.3d 318, 320–21 (5th Cir. 2008) (explaining that an employer does not "transact[] business" within the meaning NLRA § 160(f) simply because the employer "advertises to [in jurisdiction] customers").

7

"especially if the parent exercises its 'ability . . . to influence major decisions of the subsidiary which lead or could lead to violations of the antitrust laws.'" *Id.* at 1173. In other words, if a parent were to control a subsidiary in a manner that resulted in the two entities engaging, collectively, in an antitrust violation, venue would be appropriate in a district in which the parent controlled the subsidiary's conduct in this regard. No such similar concern exists under the NLRA and, in any event, the EEOC's investigation does not concern parental control over a subsidiary's employment practices in this District. To the contrary, the EEOC expressly excluded the employment practices of NIKE's subsidiaries from the scope of the Subpoena. *See* Cockroft Decl., Ex. Q at 21.

Additionally, the EEOC cites no compelling reason why Clayton Act jurisprudence should be grafted on to the meaning of "transacts business" under the NLRA.[2] Under the NLRA, courts maintain the distinction between parents and subsidiaries. *See Bally's Park Place*, 546 F.3d at 320–21 (joining sister circuits "maintain[ing] a distinction between parent corporations and their subsidiaries" under the NLRA, explaining that only the contacts of the entity at issue are relevant, not their parent or subsidiaries, and dismissing petition for lack of venue under analogous "transacts business" test for judicial review) (collecting cases). The Opposition does not cite a single case holding that venue may be established under § 161(2) based on the activities of a respondent's subsidiaries where, as here, corporate formalities are observed and the subsidiary's conduct in the District is not the subject of investigation.

Accordingly, the EEOC has failed to meet its burden of establishing that NIKE "transacts business" in this District.[3]

---

[2] *Cf. Call Carl, Inc. v. BP Oil Corp.*, 391 F. Supp. 367, 377 (D. Md. 1975) ("'Transacting business' for the purpose of section 12 [of the Clayton Act] has a meaning independent of definitions which other courts have given the same phrase in construing other state and federal statutes."); *see also Kolb v. Chrysler Corp.*, 357 F. Supp. 504, 508 (E.D. Wis. 1973) (collecting cases).

[3] The Court should reject any argument that the presence of less than 0.1% of NIKE's employees working from Missouri constitutes "transact[ing] business" in this District. Even under the EEOC's preferred reading (i.e., the Clayton Act), courts routinely reject the claim that the presence of employees in a jurisdiction constitutes "transact[ing] business" within

## II.    Alternatively, the Court Should Exercise its Discretion to Transfer this Matter to the District of Oregon

The Opposition's arguments in opposition to discretionary transfer lack merit and depart from settled precedent.

It first contends that voluntary transfer would "create further delay." *See* Opp. at 11. Any delay associated with transfer, however, would be the result of the EEOC's extraordinary decision to seek enforcement of the Subpoena in a district unrelated to the subject of its investigation. By filing in this District, the EEOC brought delay upon itself, injecting into its enforcement action the need for this Court to resolve its unprecedented attempts to expand the NLRA's venue provision. Transfer would mitigate any delay associated with resolving these issues.

Furthermore, while the Opposition repeatedly accuses NIKE of attempting to delay the EEOC's investigation, *see, e.g.*, Opp. at 1, 13, 15-16, the record tells the opposite story. NIKE has cooperated with the EEOC's investigation, produced thousands of pages of documents, and continued to produce documents even after the EEOC filed the Application. *See generally* ECF No. 12. NIKE requested a meet-and-confer to continue to move things along, and NIKE's primary objection to any outstanding Subpoena Requests is that it does not understand what more the EEOC is asking for. *See id.* It is the EEOC, not NIKE, that is causing delay by refusing to meet-and-confer[4] and prematurely, and perhaps unnecessarily, seeking relief from this Court. *See id.*

---

the jurisdiction, especially if the employees provide only remote services to the out-of-state employer. *See, e.g.*, *Am. Home Healthcare Sys., Inc. v. Floyd Mem'l Hosp. & Health Servs.*, 2017 WL 2261740, at *3 (W.D. Ky. May 23, 2017) ("The fact that some of [the defendant]'s employees resided in Kentucky, without a showing that they transacted any business in Kentucky, is not enough to satisfy the standard for Section 12 of the Clayton Act."); *Hansen v. Nw. Univ.*, No. 24 C 9667, 2025 WL 2731378, at *6 (N.D. Ill. Sept. 24, 2025) (finding that the plaintiff failed to establish that out-of-state defendants "transact[] business" in Illinois because "while some have several employees who reside in Illinois, those employees provide remote services to the Non-Illinois Defendants outside of Illinois").

[4] The EEOC contends that it met-and-conferred with NIKE's prior counsel on June 26, 2025. *See* ECF No. 24 at 2. NIKE disputes the notion that there were any substantive discussions on that call, but regardless, the parties could not have possibly discussed on that call the Subpoena requests now in dispute because the Subpoena was not served until October 1, 2025, a full three months later.

9

The Opposition next contends that the interests of justice do not support discretionary transfer, principally for reasons of judicial economy and costs of litigation. *See* Opp. at 12-13. This is incorrect. Regardless of whether the District of Oregon has a higher caseload, judicial economy is better served through transfer because the District of Oregon would not be called upon to address the novel and ultimately erroneous positions of law taken by the EEOC in the Application. Furthermore, it will be more costly for NIKE to litigate in this District. While the Subpoena does not request interviews, the EEOC has not foreclosed the possibility that it may seek testimony in relation to NIKE's responses and production. *See* Mot. at 13 (explaining that witnesses who could testify to the completeness of NIKE's production reside in Oregon). Similarly, while the EEOC may not be seeking original documents or evidence at this very moment, "if the need arises to refer to original documents or evidence in the litigation, [the district where the movant is headquartered] would prove more convenient." *In re Apple, Inc.*, 602 F.3d 909, 914 (8th Cir.2010).

The Opposition also contends that courts give "considerable deference" to the plaintiff's choice of forum. *See* Opp. at 13. Oddly, the EEOC entirely disregards the cases referenced in the Motion maintaining that a plaintiff's choice of forum is outweighed when there is a "lack of connection between the action and [the forum]." *See Dube v. Wyeth LLC*, 943 F. Supp. 2d 1004, 1007 (E.D. Mo. 2013) (Webber, J.); *see also Farah Mfg. Co. v. NLRB*, 481 F.2d 1143 (8th Cir. 1973) (transferring the case to another Circuit Court "based on sound principles of judicial administration because petitioner's filing in the circuit amounted to 'forum shopping,' a practice to be discouraged.").

Last, the EEOC contends that NIKE cannot show that Oregon would be more convenient. *See* Opp. at 14. Obviously, Oregon would be more convenient for NIKE, as all relevant documents and witnesses are located there, along with NIKE's in-house counsel who might attend future proceedings in the matter. Much of EEOC's argument in this regard is premised on the assumption that its Application will involve but a single, in-court, non-evidentiary hearing. But at this early

10

juncture, who is to say?  At this time, the possibility that a witness will need to testify about the availability of relevant records or the burden imposed by the EEOC's requests cannot be ruled out. And the EEOC should not be heard to complain about the convenience of Oregon because its investigation has, from inception, been led by an investigator out of its San Francisco District and Seattle Field Office, whose jurisdiction encompasses Oregon.

Accordingly, transfer to the District of Oregon is warranted.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the Application or transfer it to the District of Oregon.